ASH

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-09-00678-PHX-JAT-2 |
| Plaintiff, | |
| v. | **ORDER** |
| Karl John Cascketta, | |
| Defendant/Movant. | |

Defendant Carl John Cascketta, who is presently incarcerated at the United States Penitentiary in Adelanto, California (USP-Adelanto) has filed a Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 253). The Government has responded (Doc. 261), and Defendant has replied (Doc. 264). The Court will deny the Motion.

**I.   Background**

By Superseding Indictment dated August 4, 2009, Defendant and two co-defendants were charged with numerous counts related to a series of bank robberies in and around Phoenix, Arizona. (Doc. 30).[1] Pursuant to a plea agreement, on October 28, 2010, Defendant pleaded guilty to three counts of armed bank robbery (Counts 7, 9, and 13) and one count of use of a firearm during a crime of violence (Count 8). (Docs. 170, 197). On

---

[1] Specifically, Defendant was charged with one count of bank robbery (Count 2), six counts of armed bank robbery (Counts 3, 5, 7, 9, 11, 13), four counts of use of a firearm during a crime of violence (Counts 4, 8, 12, 14), two counts of conspiracy to commit bank robbery (Counts 6 and 10), and one count being a felon in possession of a firearm (Count 15). (*Id.*).

January 26, 2011, Defendant was sentenced to 264-months imprisonment,[2] to be followed by five years of supervised release; the remaining counts were dismissed. (Doc. 198).

On June 23, 2016, Defendant filed, through counsel, a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 223). After full briefing and a Report and Recommendation from the assigned Magistrate Judge (*see* CV 16-02042-PHX-JAT (D. Ariz.)), the Motion was denied on October 19, 2018. (Doc. 228).

On December 18, 2020, Defendant filed, through counsel, his first Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 238). After full briefing—including the allowance of supplemental briefing (Docs. 243-246)—the Court denied the Motion by Order dated February 24, 2021. (Doc. 247). Defendant appealed the denial, but the Ninth Circuit Court of Appeals summarily affirmed on January 5, 2024. (Doc. 252). The instant Motion followed.

In his Motion, Defendant seeks a reduction in sentence based on certain medical circumstances, his age, and his efforts at rehabilitations. (Doc. 253). Defendant's current projected release date is September 28, 2030. (*Id.* at 2).

**II.    18 U.S.C. § 3582(c)(1)(A)**

"Ordinarily, a federal court may not modify a term of imprisonment once it has been imposed." *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (internal quotations omitted) (citing *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021)). However, 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, "allows certain inmates to seek a form of sentence modification called compassionate release by filing motions to that effect with the district court." *United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022) (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)); *see also* FSA, Pub. L. No. 115-391, § 603, 132 Stat. 5194 (Dec. 21, 2018). Section 3582(c)(1)(A) provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that

---

[2] The sentence consisted of 180 concurrent months on Counts 7, 9, and 13, and 84 consecutive months on Count 8.

- 2 -

>they are applicable, if it finds that [] extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission… .

As such, when a prisoner moves for compassionate release, "district courts may reduce his term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) extraordinary and compelling reasons warrant a sentence reduction; (3) a sentence reduction is consistent with applicable policy statements issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022) (internal quotations omitted). A court "may deny compassionate release if a defendant fails to satisfy any of these grounds." *Wright*, 46 F.4th at 945.

## III. Discussion

### A. Exhaustion

The burden rests with Defendant "to provide proof that he has met the exhaustion criteria set forth in § 3582(c)(1)(A)." *United States v. Packard*, CR-19-03886-H, 2021 WL 4751173, at *2 (S.D. Cal. Oct. 12, 2021). Exhaustion under § 3582(c)(1)(A) requires that a defendant first request compassionate release from the warden at his or her facility, and that the request be denied or 30 days elapse without a response. *See* 18 U.S.C. § 3582(c)(1)(A).

Defendant states that he submitted a request for compassionate release to the USP-Adelanto warden on March 1, 2024, and that it was denied on April 4, 2024. (Doc. 253 at 3). The Government does not contest that Defendant exhausted is administrative remedies prior to filing his Motion. Accordingly, the Court will turn to the merits of the Motion.

### B. "Extraordinary and Compelling Reasons"

"[T]he determination of what constitutes extraordinary and compelling reasons for sentence reduction lies squarely within the district court's discretion." *Chen*, 48 F.4th at 1095. The only limitation on this discretion is that "rehabilitation alone cannot be extraordinary and compelling," and the determination must be consistent with the applicable policy statements issued by the United States Sentencing Commission (USSC).

- 3 -

*Id*. at 1096 (citing 28 U.S.C. § 994(t)) (internal quotation omitted).

The USSC has promulgated policy statements regarding motions for compassionate release. As relevant here, the policy statement to United States Sentencing Guideline (U.S.S.G.) § 1B1.13 provides that extraordinary and compelling reasons for compassionate release exist in six circumstances; namely, certain medical circumstances, age, certain family circumstances, when the defendant is a victim of abuse while incarcerated, when the defendant receives an unusually long sentence, or for any other reasons that are "similar in gravity" to the other five, enumerated circumstances. (*See* U.S.S.G. § 1B1.13(b)). As such, any relief must be consistent with these policy statements. *Chen*, 48 F.4th at 1095-96 (observing that "[a] district court's discretion of course has limitations," and is "bound by applicable statements from the Sentencing Commission") (*citing* 18 U.S.C. § 3582(c)(1)(A)) (internal emphasis omitted).

As noted, Defendant argues that he is entitled to a reduction in sentence based on certain medical circumstances, his age, and his efforts at rehabilitations. (Doc. 253). The Court will address each in turn.

### 1.  "Medical Circumstances of the Defendant"

United States Sentencing Guideline § 1B1.13(b)(1) provides that extraordinary circumstances exist when:

> **(1) Medical Circumstances of the Defendant.--**
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide

>   self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>   (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
>   (D) The defendant presents the following circumstances—
>
>   > (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>   >
>   > (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>   >
>   > (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1) (eff. Nov. 1, 2023).

Defendant avers that he "has a history of colon polyps, Hepatitis C, and psoriasis … as well as pitting edema…" (Doc. 253 at 6). Defendant further avers that "the medical staff has done nothing to aid him in treatment or assist him in maintaining his health properly," and that as a result "his health has dramatically declined…" (*Id.*). Defendant also states that he was assaulted in 2021, during which he received injuries to his head that have "caused severe deterioration to the cognitive function of his mental capacity." (*Id.*). Finally, Defendant appears to indicate that he has not received a colonoscopy, is "physically blind due in large part to the deliberate indifference and negligence of the medical staff," and that his "serious personal health conditions while incarcerated [] places him within a higher risk of harm from COVID-19…" (*Id.* at 7).

In Response, the Government does not dispute that Defendant suffers from the above physical ailments, but argues that they "are well managed and treated" and "do not diminish his ability to provide self-care." The Government indicates, and provides evidence to support, that Defendant "has received various medications and services to treat

his medical ailments," including an oral prescription and ointment for psoriasis, two prostate medications, two antidepressants for anxiety, and two medications for pain. (Doc. 261 at 6).[3] In 2017, Defendant received a colonoscopy, a polyp was removed, and another colonoscopy was recommended in 10 years. (*Id.*). In 2022, an additional colonoscopy was recommended, and Defendant is currently awaiting scheduling. (*Id.*). Additionally, the Government notes that at least some of Defendant's ailments are the result of injuries sustained when—contrary to Defendant's assertion that he was assaulted—he attacked another inmate in 2021, and that he has received continuing care for those injuries (including hardware in his jaw and consultation with an oral and maxillofacial surgeon). (*Id.* at 7; *see also* Doc. 261-3 at 2-9).

In his Reply, Defendant continues to assert that "BOP has generally not responded to many of the issues that have arisen with his medical conditions," but does not provide any specific examples of how the BOP has allegedly done so. Defendant further asserts that his vision difficulties—Defendant is blind in one eye and has low vision in the other (Doc. 261 at 6 n. 2)—puts him at risk of violence from, and makes him dependent on, other inmates. (Doc. 264 at 2). However, Defendant provides no evidence that he is presently at risk of violence from any inmates, or that he has been unable to provide self-care while incarcerated. Defendant provides no evidence that the "cognitive function of his mental capacity" has severely declined, and the Government indicates that Defendant "has no health-related work, physical, or housing restrictions," suggesting that Defendant does not suffer any serious physical or medical impairment, functional or cognitive impairment, or deteriorating physical or mental health. (Doc. 261 at 7). As such, the Court finds Defendant's allegations to be vague, conclusory, and unsupported by the evidence, and are thus insufficient to support that his medical conditions rise to the level of extraordinary and compelling reasons for a reduction in sentence.

---

[3] The Government notes that Defendant was previously prescribed Tramadol, but the prescription was removed in 2021 after it was discovered that Defendant was diverting the medication to his cellmate. (*Id.* at 6 n. 3).

2. Age

United States Sentencing Guideline § 1B1.13(b)(2) provides that extraordinary and compelling circumstances exist when:

> **(2) Age of the Defendant**.—The Defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(§ 1B1.13(b)(2)).

Defendant is more than 65 years old and has served more than 10 years of his term of imprisonment, and thus satisfies § 1B1.13(b)(2)(A) and (C). However, for the reasons already discussed, Defendant has not shown that he is experiencing a serious deterioration in physical or mental health because of the aging process, and thus fails to satisfy § 1B1.13(b)(2)(B). As set forth *supra*, Defendant's medical ailments are well-managed, he has no health-related work, physical, or housing restrictions, and although his vision has worsened (and he alleges that it continues to worsen), that loss of vision is at least partially self-inflicted[4] and thus not a result of the aging process. Accordingly, Defendant has not demonstrated that his age is an extraordinary and compelling reason for a reduction in sentence.

3. Rehabilitation

Defendant states that he has engaged in substantial rehabilitation while incarcerated, and has been incident free for the past two years. (Docs. 253 at 7; 264 at 3). While commendable, rehabilitation alone is insufficient to demonstrate that extraordinary and compelling reasons exist for a reduction in sentence. 28 U.S.C. § 994(t). While rehabilitation may be considered in conjunction with other bases for a reduction in sentence, because the Court concludes that Defendant has failed to demonstrate that other extraordinary and compelling reasons exist for a reduction in sentence, it concludes that Defendant's efforts at rehabilitation cannot satisfy § 3582(c)(1)(A).

---

[4] As noted, Defendant suffered maxillofacial injuries to his left eye as a result of assaulting another inmate in 2021. (*See* Doc. 261-3 at 7).

**C.     18 U.S.C. § 3553(a)**

Finally, even assuming *arguendo* that Defendant had sufficiently demonstrated that extraordinary and compelling reasons exist for a reduction in sentence, the Court concludes that release would not be warranted because the 18 U.S.C. § 3553(a) sentencing factors do not support a reduction in sentence.

Pertinent factors under § 3553(a) include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. 18 U.S.C. § 3553(a)(1), (2). The Court may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities among similarly situated defendants and to provide restitution to victims. 18 U.S.C. § 3553(a)(4), (6)-(7).

As recounted in the Plea Agreement,

> On March 11, 2009, [Defendant] entered the Desert Schools Federal Credit Union … and announced "this is a robbery" as [he] brandished a handgun. [Defendant] approached the victim-tellers … pointed the handgun at them, and demanded that they clear out both drawers. [Defendant] also demanded that they not push any alarms. That intentional display of force with the handgun caused the tellers to fear bodily harm, and [Defendant] knowingly brandished [the handgun] during and in relation to the robbery. The tellers complied with [Defendant's] demands and [he] fled the bank. An audit conducted after the robbery determined that [Defendant] had stolen $1,744.00 in NCUA-insured currency.
>
> On March 17, 2009, [Defendant] entered the Chase Bank … and [he] approached the victim-teller… [Defendant] put a note that threatened a bomb up to her window and told her it was a robbery. When she hesitated, [Defendant] told her to give [him] the money because [he] had a bomb. Indeed, [Defendant] had a simulated explosive device with [him], which [he] left on the teller counter after she complied with [his] demands. The simulated bomb reasonably caused the teller to fear bodily harm. An audit conducted after the robbery showed that $3,421.00 in currency insured by the FDIC had been stolen. The Phoenix Police Department Bomb Squad had to respond to the bank due to the device [Defendant] left behind.
>
> On April 15, 2009, [Defendant] entered the US Bank… [Defendant] approached two victim-tellers … and [he] demanded money as [he] displayed a handgun. In addition to the handgun, [Defendant] had a simulated explosive device and [he] told them, "I have a bomb, I need you to put all the money in" a bag [he] had brought. [Defendant] left the device

> on the teller counter after both tellers complied with [his] demands. The simulated bomb and the handgun reasonably caused the tellers to fear bodily harm. [Defendant] then fled the bank. An audit was completed after the robbery and revealed that $3,655.01 in FDIC-insured currency was stolen. The Phoenix Police Department Bomb Squad had to respond to the bank due to the device [Defendant] left behind.

(Doc. 197 at 7-8). Further, and as the Court noted when denying Defendant's previous § 3582 Motion in 2021,

> [Defendant]'s presentence report describes that [Defendant] stated he feels a "thrill" when committing crimes that he likened to "an addiction." This characterization is consistent with [Defendant]'s extensive criminal record, spanning the course of [Defendant]'s adult life, including several burglaries and misconduct involving weapons. For this reason, the Court is unpersuaded that [Defendant]'s present age will make him less likely to reoffend, especially considering that [Defendant] committed the series of crimes for which he is presently incarcerated when he was 51 years old.

(Doc. 247 at 4) (internal citations omitted). The Court further noted that Defendant

> committed the crimes for which he is presently incarcerated while on federal supervised release following an incarceration term for counterfeiting securities. And [Defendant]'s rather extensive prison disciplinary record, including possession of contraband and assaulting another inmate, indicates that [Defendant] is unlikely to comply with the rules of any restrictive program outside of prison.

(*Id.* at 5) (internal citations omitted). Nothing Defendant presents in his instant Motion persuades the Court to reconsider these conclusions. As such, for the same reasons as those set forth in the Court's 2021 Order (*id.*), the Court finds that any reduction in sentence would not reflect the seriousness of Defendant's offenses, promote respect for the law, or provide just punishment. Nor does the Court find that Defendant has demonstrated that he is no longer a danger to the public. (U.S.S.G. § 1B1.13(a)(2); 18 U.S.C. § 3142(g)).

Accordingly, **IT IS ORDERED** that Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 253) is **denied**.

Dated this 22nd day of May, 2025.

_____
James A. Teilborg
Senior United States District Judge